IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMANTHA JO BUCHINSKY, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security*, )<br>)<br>Defendant. ) | Civil Action No.  20-1906 |

## ORDER

AND NOW, this 28th day of July, 2022, having considered the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.,* finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (explaining substantial evidence demands only that the "existing administrative record…contains 'sufficien[t] evidence' to support the agency's factual determinations"); *Jesurum v. Secretary of U.S. Department of Health & Human Services,* 48 F.3d 114, 117 (3d Cir. 1995).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]     At the outset, the Court notes that Plaintiff does not dispute the relevant time period for this matter is July 4, 2016 through June 30, 2018, her date last insured.  (R. 17).  Nonetheless, the vast majority of Plaintiff's arguments rely on evidence from after the relevant period and that relates to a time period after the date last insured.  (Doc. No. 21, pp. 16-25).  As such, reliance

upon the same is misplaced.  The Court finds that substantial evidence from the relevant period supports the ALJ's decision and will therefore affirm.

Turning to Plaintiff's first argument, Plaintiff submits that the Administrative Law Judge ("ALJ") erred by failing to discuss or find that she meets Listing 1.03 at Step Three of the Social Security Administration's sequential analysis.  At this step, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Jesurum*, 48 F.3d at 117.  An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary.  *See Burnett v. Commissioner*, 220 F.3d 112, 119 (3d Cir. 2000).  It is a claimant's burden to show that his/her impairment matches a listing or is equal in severity to a listed impairment.  *See Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).  It is important to remember that to meet a listing, a claimant must "present medical findings equal in severity to *all* the criteria of a listed impairment." *Degenaro-Huber v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 73, 75 (3d Cir. 2013) (*quoting Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original)).

The relevant portion of Listing 1.03 at the time of the date of the decision required "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with the inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id.* (effective September 24, 2019 - November 25, 2019).  In support of the same, presumably Plaintiff assumes that her spine is a major weight bearing joint, c*ompare* Listings 1.02 and 1.04, and argues that her need for a walker constitutes sufficient evidence that she meets the requirement of a hand-held assistive devise as defined in 1.00B2b.  Plaintiff similarly argues that the ALJ erred by failing to include the limitation that she requires the use of a wheeled walker for ambulation in the residual functional capacity ("RFC").  (Doc. No. 21, pp. 20-21).  However, these arguments rely for support on a receipt for a walker dated in September of 2019.  (Doc. No. 21, p. 17).  This 2019 receipt is dated over a year after the relevant time period, relates to a time period after the date last insured, and is irrelevant to the time period at issue before the ALJ.  Plaintiff cites to no evidence supporting the need for a hand-held assistive devise during the relevant time period.  In fact, Plaintiff testified that she did not use a walker.  (R. 47-48).  Furthermore, she reported that she was not prescribed a walker and did not need a walker.  (R. 227).  For the reasons set forth above, the Court is unpersuaded by this argument and finds no error in this regard.

Plaintiff next argues that the ALJ failed to consider the May 9, 2019 assessment by Scott Berry, M.D., "where Dr. Berry diagnosed Plaintiff with failed back syndrome and chronic back pain." (Doc. No. 21, p. 18).  Again, this evidence is dated approximately one year after the relevant time period, related to a time period after the date last insured, and is irrelevant to the time period at issue such that the ALJ was not required to discuss it.  Moreover, the Court notes that Plaintiff's application was filed in February of 2018.  For claims filed on or after March 27, 2017, the regulations governing the types of opinions considered, what constitutes a medical opinion, and the approach to the evaluation of opinions by ALJs were amended.  The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related

limitations or restrictions" in the ability to perform the demands of work activities. 20 C.F.R. § 404.1513(a)(2). To be clear, diagnoses in treatment records are not "medical opinions," and the treatment record of Dr. Berry does not constitute a medical opinion under the new regulations. For these reasons, the Court finds the ALJ did not error in failing to discuss the May 9, 2019 assessment by Dr. Berry.

Plaintiff also submits that the ALJ erred by not providing valid reasons for rejecting the opinion of her treating doctor, James Masterson, D.O. However, again, the Court notes that the medical opinion of Dr. Masterson was dated September of 2019. (R. 483-485). This evidence is from over one year after the relevant time period and related to a time period after the date last insured, so it is unclear what relevance, if any, this opinion even had. Nonetheless, the ALJ considered the same and found it to be less persuasive. (R. 21). The reasons given by the ALJ were valid (the opinion was outside the relevant period, inconsistent with the treatment records, inconsistent with Plaintiff's activities of daily living, and inconsistent with her examinations) and such reasons are supported by substantial evidence. Thus, the Court finds the ALJ did not err in this regard.

The Court is also unpersuaded by Plaintiff's argument that the ALJ "failed to explain why the Plaintiff's moderate mental limitations [found at Step Three] did not translate into limitations in the Plaintiff's RFC" or the hypothetical questions posed to the vocational expert ("VE") regarding time off task. (Doc. No. 21, p. 19). As the ALJ aptly stated, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (R. 19). In other words, limitations identified at Steps 2 and 3 do not necessarily translate into specific RFC limitations. In assessing Plaintiff's mental functioning limitations, the ALJ found the opinion of Sarah Trafican, Psy.D., to be persuasive; based on the same, the ALJ limited Plaintiff to simple, routine, repetitive tasks and simple, work-related judgments and decisions. (R. 19). Additionally, the ALJ found Plaintiff could understand, remember and carryout only short and simple instructions and could have no more than occasional changes in a routine work setting and that she could perform goal oriented but not fast passed work with frequent interaction with coworkers, supervisors and members of the general public. (*Id.*). After a review of the evidence, the Court finds the ALJ properly considered Plaintiff's mental functioning limitations and explained her findings regarding the same sufficiently. To that end, the Court finds the above-referenced limitations in the RFC are supported by substantial evidence. Thus, the Court finds no error in this regard.

With regard to her RFC, Plaintiff additionally concludes – without any substantial argument or discussion – that the "ALJ committed legal error by not undertaking an evaluation of the medical evidence to determine whether the combined and cumulative effects of Plaintiff's reconstructive scoliosis fusion back surgery, obesity, failed back syndrome, chronic back pain and use of a wheeled walker impacts Plaintiff's work ability and whether these impairments require additional restrictions on Plaintiff's ability to perform work related functions." (Doc. No. 21, p. 22). Plaintiff's bald assertions aside, the Court notes that it has no reason to believe the

3

ALJ did not consider the combined effect of all of Plaintiff's severe and non-severe impairments, as she acknowledged consideration of all of Plaintiff's symptoms in rendering her RFC finding. (R. 19). In her discussion of the evidence pertaining to the RFC, the ALJ discussed evidence of Plaintiff's back surgery, obesity, back pain, and use of a wheeled walker (noting that it occurred after the date last insured). (R. 19-22). As discussed previously, the ALJ did not err in failing to consider Dr. Berry's diagnosing Plaintiff with failed back syndrome because the same was rendered almost a year after the relevant period and related to a time period after the date last insured. The Court has no reason to disbelieve the ALJ's assertion that she accounted for all of Plaintiff's relevant impairments in the RFC. Where the Court has no reason to believe the ALJ did not account for all of Plaintiff's impairments, it takes the ALJ "at his word." *Jones v. Comm'r of Soc. Sec.*, 297 Fed. Appx. 117, 120 (3d Cir. 2008).

Finally, Plaintiff argues the ALJ erred "by not resolving the conflict between the VE SVP 2 reasoning level and the DOT [Dictionary of Occupational Titles] SVP 1 reasoning level for jobs having simple tasks and simple decision making in derogation of SSR 00-4p." (Doc. No. 21, pp. 3-4, 23-24). Upon review, Plaintiff appears to conflate the Specific Vocational Preparation (SVP) category with the General Educational Development (GED) reasoning category in her discussion. An SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appx. C, Dictionary of Occupational Titles ("DOT"). SVP levels 1 and 2 are defined as anything beyond short demonstration up to and including 1 month. *See id.* In contrast, a GED reasoning level is one of the three divisions of the general educational development. *See id.* "Reasoning levels in the Dictionary of Occupational Titles range from level 1 to level 6" with level 1 being the lowest reasoning level and level 6 requiring the most reasoning. *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). Reasoning level 1 involves applying commonsense understanding to carry out simple one- or two-step instructions in standardized situations with occasional or no variables on the job. Appx. C, DOT. Reasoning level 2 involves applying commonsense understanding to carry out detailed but uninvolved written or oral instruction in problems involving a few concrete variables in standardized situations. *See id.* Plaintiff's argument discusses her ability to perform "simple tasks." (Doc. No. 21, pp. 4, 23). Thus, the relevant inquiry relates to Plaintiff's GED reasoning level, not her SVP.

Regardless, contrary to Plaintiff's assertion otherwise, the Third Circuit has held that a reasoning level of 2 does not contradict a restriction to simple, routine, and repetitive tasks and declined to hold a *per se* conflict between a reasoning level and simple and repetitive tasks involving routine work. *See Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004). In fact, "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires ***level 3*** reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618 (emphasis added). Thus, the Court finds no merit to Plaintiff's final argument. In any event, Plaintiff has made no real argument that she could not perform the jobs at issue, and, as discussed herein, the ALJ discussed the medical evidence and its impact on Plaintiff's functional limitations at great length. Moreover, Plaintiff did not raise any inconsistencies at the hearing. Finally, the jobs found by the ALJ were offered as "representative occupations." (R. 23). Accordingly, there is no basis for remand on this point.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 20) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 23) is GRANTED as set forth herein.

s/ Alan N. Bloch
United States Senior District Judge

ecf:   Counsel of Record

---

For all of the reasons stated herein, the Court finds that the ALJ applied the proper legal standards in this case and that substantial evidence supports the ALJ's decision. The Court, therefore, affirms the decision.